UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOHN IVY, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 1:23-cv-00819-JPH-TAB |
| ) | |
| WARDEN Correctional Industrial Facility, ) | |
| ) | |
| Respondent. ) | |

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND
DIRECTING ENTRY OF FINAL JUDGMENT**

John Ivy seeks a writ of habeas corpus under 28 U.S.C. § 2254. He challenges a prison disciplinary proceeding, IYC 22-07-0208, in which he was found guilty of staff assault and sanctioned with a 365-day loss of credit time and a two-step credit class demotion. For the reasons explained below, the disciplinary proceeding did not violate Mr. Ivy's due process rights, and his habeas petition is **denied**.

**A.   Overview**

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the

reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,* 418 U.S. 539, r. 563-67 (1974).

### B. The Disciplinary Proceeding

On July 21, 2022, S. Puckett charged Mr. Ivy with offense A-117, battery against a staff person, in case IYC 22-07-0208. Dkt. 10-1. The report of conduct states:

> On 7/9/2022 it was reported that incarcerated individual IVY, JOHN 983575 had grabbed Pharmacy Tech R. Scott and pulled her into the medical waste closet. A review of the camera system showed that on 7/9/2022 at 5:23:50 pm Scott opened the door for I.I. Ivy to place a red bag into the closet and he walked in. Scott was holding the door and at 5:24:28 grabs her right arm and pulls her into the closet. Scott was able to break free and secure the closet and notified HSU staff.

*Id.*

A report of investigation of incident, dated July 22, 2022, contains the same information as the conduct report. Dkt. 10-2.

Mr. Ivy was originally notified of the charge "battery" and offense of 102A on July 22, 2022. Dkt. 10-1. Offense 102A, Battery Against Offender, is defined as "[c]ommitting battery against another offender (1) with a weapon; (2) with bodily fluids, including but not limited to saliva, urine, feces, semen, or blood; or (3) resulting in serious bodily injury." Dkt. 10-13 at 1.

The conduct report was later revised and on February 9, 2023, the screening officer notified Mr. Ivy that the charge was "staff assault," 117A. Dkt. 10-1. Mr. Ivy was provided with copies of the amended report of conduct and the

notice of disciplinary hearing (screening report). Dkt. 10-3. Mr. Ivy pled not guilty. *Id.* He requested a lay advocate and one was appointed. *Id.* As physical evidence, Mr. Ivy requested a video, noting that "nothing showed I battered anybody." *Id.* Mr. Ivy also requested a copy of the statement of the victim and of the injury report. *Id.* Notations next to these requests state, "statement obtained by Scott" and "no injury report." *Id.* The disciplinary hearing was postponed once. Dkt. 10-5.

On February 21, 2023, Sgt. J. Pardue reviewed the video footage and prepared a video review report, which states:

> I Sgt. J. Pardue reviewed video footage for IYC 22-07-0208. During the screening of offender Ivy #983575 he requested video of the incident in question showing that he did not batter anybody, copy of form statement of the victim claiming battery and copy of injury report.
>
> Video was reviewed of the incident in question. During the video review Ms. Scott can be seen walking to a closet/storage area with offender Ivy while he is carrying a red bag in his hand. Scott opens the door and Ivy enters. As Ivy enters the closet he can be seen motioning with his hand for Scott to enter. Scott moves closer to the room, but does not enter. She can be seen speaking to Ivy. During their conversation, Ivy can be seen grabbing Scott's right arm. Scott places her left arm on the door frame so she is not pulled into the room completely. After she breaks free, Scott continues speaking to Ivy. Shortly after Ivy exits the storage closet and Scott secures the door. After the door is secured they both can be seen walking away.
>
> There were no injuries reported. Scott denied outside medical attention.
>
> Statement that was made by Scott was that Incarcerated Individual Ivy, John #983575 had tried to pull her into the closet near the Dialysis room.

Dkt. 10-7.

Staff provided a copy of the report to Mr. Ivy on February 22, 2023. *Id.* The Court reviewed the video, and its review is consistent with that of Sgt. Pardue.

On February 23, 2023, Mr. Ivy submitted a request for interview, which contained questions for pharmacy tech Scott. Dkt. 10-9 at 1. Ms. Scott answered the questions telephonically, and the answers were recorded on an IDOC form. Dkt. 10-9 at 2.

> Question 1 asked: "Did Ivy batter or assault you or did he attempt to do so?"
> Scott responded: "He just grabbed my arm and pulled me into the closet."
>
> Question 2 asked: "Did Ivy grab your hand and pull you in the closet, or was it just helping stack bio boxes?"
> Scott responded: "I don't remember seeing any small boxes, he was throwing away trash that he collected. He grabbed my arm."
>
> Question 3 asked: "Did you give statement that Ivy pulled you into the closet because you were afraid I.A. my have thought something happened in closet between you and Ivy?"
> Scott responded: "No, I made a statement because he grabbed my arm and you're not allowed to touch workers there."

Dkt. 10-9 at 1-2.

The disciplinary hearing officer ("DHO") held a hearing in case IYC 22-07-0208 on March 3, 2023. Dkt. 10-6. Mr. Ivy pled not guilty and stated:

> Written statement from Scott is not written, it's an oral statement. I never got evidence. Should the conduct report details. I should have conduct detail on screening form. It was out of time frame. 24 hours from incident in question. My due process was violated. In policy pg. 16 number 9 violated. The dates when I was assigned to the investigation. (Time frame issue). I did not grab her. We were going to move the file cabinet. She was helping move boxes. (4 page statement submitted.)

*Id.* (errors in original).

4

In Mr. Ivy's four-page statement, he cites certain portions of the Disciplinary Code for Adult Offenders ("DCAO") and provides some dictionary definitions. Dkt. 10-8.

The DHO considered the staff reports, Mr. Ivy's statement, witness evidence, the investigation report, the video, the still photographs, and a confidential I & I investigation. Dkt. 10-6. The DHO found Mr. Ivy guilty of offense A-117, battery on a staff member. *Id.* The decision stated: "Ivy knowingly and intentionally touched Scott (grabbed arm and pulled her)." *Id.* The DHO further stated that "[a]ll evidence [was] considered," that he "[r]elied on video and Scott statement," and that "[t]ime frame [is] not a reason for dismissal or not guilty finding. Ivy given over 24 hours after all evidence given to him to prepare defense." *Id.* The DHO imposed sanctions of a 365-day credit time deprivation and a two-step credit class demotion. *Id.* In addition, the DHO ordered Mr. Ivy to spend 180 days in restrictive housing. *Id.* On appeal, Mr. Ivy's sanctions were reduced to a 180-day credit time deprivation and a one-step credit class demotion. Dkt. 10-12.

Mr. Ivy's appeals were denied. This habeas action followed.

**C.    Analysis**

Mr. Ivy's claims are restated as follows: 1) there was insufficient evidence to support the charge; and 2) he was denied evidence. Dkt. 2 at 3-5.

**1. Insufficient Evidence**

In support of his first claim, Mr. Ivy contends that the offense of "staff assault" requires a finding of bodily injury. Mr. Ivy is mistaken. Ms. Scott did not

5

allege that Mr. Ivy caused any injury, and Code 117 does not require injury. The conduct report and the report of hearing did list "staff assault" as the offense, but they also showed "117A" as the code number. Dkt. 10-1, dkt. 10-6. Mr. Ivy was found guilty of violating Code 117, "battery against a staff person," which is defined in relevant part as "committing battery against a staff person...." Dkt. 10-13 at 3. "Battery" is defined as "knowingly or intentionally touching another person in a rude, insolent or angry manner." Dkt. 10-14 at 3.

In a prison disciplinary proceeding, the "hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison*, 820 F.3d at 274. The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002). "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455–56 (emphasis added); *see also Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("The some evidence standard . . . is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board.") (internal quotation omitted). In this case, the DHO relied on the video evidence, Ms. Scott's responses to Mr. Ivy's questions, and the investigative report. Dkt. 10-6. This constituted "some" evidence that Mr. Ivy committed a battery against a staff person.

Mr. Ivy therefore cannot succeed on his claim of insufficient evidence.

### 2. Denial of Evidence

Mr. Ivy next argues that he was denied evidence. He requested a copy of the injury report, but because there was no injury, there was no injury report. He also asked for the conduct report *written by Ms. Scott,* but she did not author the report. Evidence that does not exist cannot be provided. Similarly, there was no *signed* statement by Ms. Scott, because her responses to Mr. Ivy's questions were transcribed after she responded by telephone. This alleged denial of evidence did not amount to a violation of due process.

Due process affords an inmate in a disciplinary proceeding a limited right to present "evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff*, 418 U.S. at 566. Due process is not violated unless the inmate is deprived of an opportunity to present material, exculpatory evidence. *See Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003). Evidence is exculpatory if it undermines or contradicts the finding of guilt, *see Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011), and it is material if disclosing it creates a "reasonable probability" of a different result, *Toliver v. McCaughtry*, 539 F.3d 766, 780–81 (7th Cir. 2008). "Prison administrators are not obligated to create favorable evidence or produce evidence they do not have." *Manley v. Butts*, 699 F. App'x 574, 576 (7th Cir. 2017). Ms. Scott's responses to Mr. Ivy's questions are consistent with the video evidence. Mr. Ivy does not contend that Ms. Scott's responses would have been exculpatory if they had been signed.

There was therefore no due process violation under these circumstances.

7

### D. Conclusion

"The touchstone of due process is protection of the individual against arbitrary action of government." *Wolff*, 418 U.S. at 558. There was no arbitrary action in any aspect of the disciplinary proceedings identified in this action, and there was no constitutional infirmity in the proceeding which entitles petitioner to the relief he seeks. Accordingly, Mr. Ivy's petition for a writ of habeas corpus must be **denied** and the action **dismissed.**

Mr. Ivy's motion for status of case, dkt. [23], is **granted to the extent** that this Order resolving the case is issued. Judgment consistent with this Order shall now issue.

**SO ORDERED.**

Date: 5/9/2025

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

JOHN IVY
983575
PLAINFIELD - CF
PLAINFIELD CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Monika P. Talbot
INDIANA ATTORNEY GENERAL
monika.talbot@atg.in.gov